MINNIE RANKIN DUNHAM et al., Appellees, v. C. A. DUNHAM, Appellant.

**JUDGMENT:** Construction of Contractual Decree. In the construc-
1    tion of a contractual decree, the facts and circumstances attending the execution of the contract, which was, in part, carried into the decree, may be given due consideration.

**JUDGMENT:** Construction of Contractual Decree. A contractual
2    decree requiring defendant "to pay all the expenses of each of said children while they are away from the home of their mother, at school or college, and shall pay (other named ex-

penses of the children) until each of said children is of legal age," is reviewed, and, in the light of the circumstances, is held to charge defendant with the college expenses of the children, *even after they attained their majority.*

DIVORCE: Modification of Contractual Decree. A contractual decree (based upon a contract entered into prior to the decree of divorce) wherein defendant was charged *generally* with the obligation to defray the expense attending the education of his children after attaining their majority, may, on defendant's subsequent default, be so modified as to fix and determine the *specific* amounts which defendant shall pay for said purpose.

PLEADING: Failure to Obtain Leave to Amend. An amendment will not be stricken for want of leave, if leave would have been given, if asked.

INFANTS: Action by Next Friend—Abatement. An action beneficial in its nature, brought by a minor by his next friend, does not automatically abate, upon the minor's attaining his majority.

EQUITY: Once-Acquired Jurisdiction. Principle recognized that equity, having once acquired jurisdiction, will adjudicate all matters pending, even though some such matters are purely law questions.

PARTIES: Beneficiary Under Contractual Divorce Decree. In an action to enforce a contractual divorce decree, in so far as it obligated defendant to furnish his child with a college education, even though the child has attained its majority, the child is a proper party plaintiff.

DIVORCE: Support of Children. A fair and just contract, carried into the decree of divorce, and providing for the support of the children of the parties by one of the parties, may be enforced.

DIVORCE: Contractual Decree in re Support of Children—Enforcement. When one parent is, by the decree of divorce, obligated to provide for the support and education of a child, in accordance with a fair and just contract which is carried into the decree, and refuses to carry out such obligation, the other party to the proceeding may recover of the defaulting party sums necessarily expended in supporting and educating the child.

DIVORCE: Contractual Decree in re "Extraordinary" Expense—Attorney Fees. In an action to enforce a contractual decree, in so far as such decree was for the benefit of minors, *held* that

the court might make a reasonable allowance of attorney fees
in favor of the minors.

*Appeal from Marshall District Court.*—JAMES WILLETT,
Judge.

JULY 6, 1920.

REHEARING DENIED OCTOBER 2, 1920.

ACTION in equity by plaintiff Minnie Rankin Dunham,
the divorced wife of defendant, C. A. Dunham, and by the
two children of the parties, to construe and modify, to fix
specific amounts for the support of the minors during mi-
nority, and the college education for them, under the alleged
contractual decree of divorce, the provisions of which were
not specific in these respects, and which plaintiffs allege de-
fendant had refused to perform; also to recover certain
moneys alleged to have been paid by the plaintiff Minnie R.
Dunham, which, under the decree, she claims should have
been paid by the defendant; and for general equitable relief.
The action is entirely in regard to property and property
rights. The action is in equity, and appellees contend that,
all parties being in court, the entire controversy may be de-
termined in one action, although, incidentally, some of the
issues might be legal. The action was brought in equity,
and there was no motion to transfer the case, or any of the
issues, to the law docket. The defendant sought to raise
jurisdictional and some other questions, by demurrers and
motions, which will be referred to later. The trial court
did not grant the full relief prayed, but plaintiffs have not
appealed. From so much of the decree as grants relief to
plaintiff, and against defendant, the defendant has appealed.
—*Affirmed.*

*E. N. Farber, Daniel L. Cruice,* and *A. S. Langille,* for
appellant.

*C. H. E. Boardman,* for appellees.

PRESTON, J.—1.  The plaintiff Minnie R. Dunham and defendant, C. A. Dunham, were married June 22, 1898, and lived together as husband and wife until about January 1, 1912.  It is claimed, and the record shows, that, about January, 1912, the defendant deserted his wife.  The plaintiff also claims that, according to the record, defendant was guilty of cruel treatment towards his wife.  Plaintiff also claims that another woman, defendant's present wife, was the cause of the desertion, and, in argument and in the pleadings, seeks, by inferences from some of the circumstances shown, to show that such was the fact.  It is true that the original petition for divorce did, in addition to the allegation of desertion, contain a sentence that defendant was guilty of cruelty; but no acts of cruelty are set out. The decree recites that the court finds that the allegations of the petition are true, and that the equities are with plaintiff.  This is the ordinary form of decree.  We are satisfied, however, that the divorce was granted on the ground of desertion, and probably by agreement between the parties, or rather, that no resistance to the divorce on that ground was contemplated.  The defendant argues at some length that plaintiff's strictures on the alleged conduct of defendant with the lady now his wife, are not sustained by the record.  In fact, at one place in defendant's argument in this court, he says that the greatest question is whether the good name and reputation of defendant and his present wife shall continue to bear the burden of defamation untruly and unjustly placed upon it by the plaintiff and her daughter, in the pleadings and arguments.  This is, perhaps, not very material, under the issues raised in this case, and we shall not go into the details.  We are satisfied that, considering all the circumstances, and the time defendant and his present wife met, a finding that defendant's present wife was the cause of the separation would not be justified. It is a most unfortunate situation for the children, with

1. JUDGMENT: construction of contractual degree.

their parents divorced, and with a stepmother. Naturally enough, there would be some antagonism, under such conditions. Without criticising unduly either defendant or his wife, nor yet entirely excusing either, the record does show that both have said and done some things that doubtless would not have been said or done under other circumstances. Plaintiff Mrs. Dunham may have been somewhat peevish or obstinate in regard to permitting defendant to have some of his personal belongings—his mother's picture, and so on.' On the other hand, it is thought that defendant was inclined to be domineering in regard to the schooling, manner of dress, etc., of the daughter, while she was away from her mother at school in the east, during her minority, and matters of that kind. The divorce decree awarded the custody of the children to the mother. We are inclined to think there was some justification in defendant's objection to some of these matters, and it is doubtless true that defendant considered that, if he was to pay the expenses of her schooling, away from home, he should have something to say in regard to such matters, especially when she was away from her mother. The daughter was only a young girl, when she started away to school. For a time after the separation of her father and mother, she seemed to be on the best of terms with her father, but later, became quite antagonistic to him. There seems to have been no friction between the parties as to the son, who was a year or two younger than his sister. There is no reflection upon the character or standing of either the mother or the daughter. The children are not at all responsible for the unfortunate conditions, and they should not suffer, financially or otherwise, therefor. Prior to the decree of divorce, and in May, 1914, plaintiff verified, but did not file, a petition for divorce, and she and the defendant entered into a written contract, in contemplation of the granting of a divorce at the September, 1914, term. By this contract, plaintiff was to have the custody of the children, the homestead and furniture, $900 in money, and $15,000 of preferred corporation stock, and $15,000 of such stock, to be deposited with a trustee, the

income of which was to be paid plaintiff for the care and support of the children, and so on. This agreement was never carried out, and seems to have been abandoned. Subsequently, negotiations for a divorce were renewed, and defendant, as plaintiff claims, made to her, through Mr. Hook, his local business manager, a proposition that plaintiff was to have the home, the furniture, automobile, and $15,000 in stock; also, the income from $15,000 additional, for her life, and the custody of the children, except that the daughter should be permitted to finish her four years' course in the school she was then attending. This contract provided, further:

"Mr. Dunham will liquidate the expenses of both son and daughter while away from their mother's home, attending school or college."

Plaintiff claims that she finally accepted this proposition. The defendant testifies that he has no recollection of it; but the circumstances are such that we are satisfied that he did authorize it. He admits that a part of it was carried out, particularly with reference to his sister. At any rate, in January, 1915, the parties entered into a written agreement, in contemplation of divorce, and conditioned upon her obtaining such divorce. This contract is signed by both. It provides, in part:

"C. A. Dunham agrees that his said wife shall have the general care and custody of the children. That the said father is to pay all expenses of the said children while they are away from home at school or college, and shall pay all bills that may be incurred in case of sickness of either of the said children until they are of legal age."

And further, that plaintiff was to have the homestead, furniture, and automobile, $15,000 preferred stock of the C. A. Dunham Company, and the income for life of $15,000 additional of the preferred stock of said company. It provides further:

"Said Mrs. Dunham agrees that she will not interfere with, but will consent to, any reasonable plan proposed by the father for the subsequent education of either of the two

children. * * * Mrs. Dunham agrees to properly edu-
cate said children both in the grammar and high schools,
and such further education as shall be consistent with the
circumstances and conditions; and in case she neglects or
is unable to do so, then the father shall be permitted to pro-
vide for the same. * * *. It is agreed that H. C. Louns-
berry, acting as counsel for Mrs. Dunham, and Binford &
Farber, acting as counsel for C. A. Dunham, shall accept
service of any and all necessary papers, and shall have gen-
eral authority to act for the parties to this agreement.
* * * The provisions made for Mrs. Dunham herein, and
the property which she is to receive when decree is entered,
as herein contemplated, shall be in full settlement and satis-
faction for all her right, title, and interest, in and to the
property of her husband."

Some of the provisions of these contracts are, in a sense,
merged in the decree; but, as shown later herein, the $30,-
000 of stock is not referred to in the decree. It is true that
the provisions as to the children are carried
2. JUDGMENT: into the decree, so that, under all the circum-
construction
of contract- stances, a consideration of the contracts has
ual decree.
a bearing, and properly so, upon the con-
struction of the decree. One of the contested points in the
case is in regard to the construction of the language before
quoted in the contract, and carried into the decree in the
same language.

"That defendant is to pay all the expenses of each of the
said children while they are away from the home of their
mother, at school or college, and shall pay all bills that may
be incurred for them in case of sickness or other extraordi-
nary necessary expense, until each of the said children is
of legal age, or self-supporting."

The defendant's contention is that, properly construed,
this means that defendant is only to pay the expenses of
the children while they are away from home, at school or
college, and so on, until they are of age; while appellees con-
tend that it means that defendant is to pay their expenses
at college in any event, and the other expenses therein re-

ferred to until they are of age. We think the language is susceptible of the construction contended for by appellees, and that, under the entire record, it was the intention of the parties, and of appellant, that he should pay for their schooling away from home, and their college education, even after they arrived at majority. Indeed, though appellant contends for a different construction, we are satisfied from his testimony, taken as a whole, and from the entire record, that he does not seriously object to giving his children a college education, and, in fact, that he desired that they should have such education. He says:

"I have not made any arrangements to pay the expenses of my daughter Winifred at college at this time. I am ready to pay the expenses of my daughter Winifred at college, depending entirely upon the attitude of the daughter, and how well we can co-operate in planning that which will be for her benefit. As a personal interest as a parent, I do claim the right to have something to say in regards where she shall go. I have not said I would not take care of her education. That is a matter between my daughter and myself."

We understand appellant to concede, in argument, that, if the language before mentioned should be so construed, then he would be liable for the college education of the children, even after their majority. He concedes, too, as we understand it, that if, under the circumstances of this case, where the contract was carried into the divorce decree, the decree is held to be contractual, then it is enforcible, under the coercive arm of the court. As said, appellees contend that it is a contractual decree, and highly so,—a contract of record; and that it may be declared upon, and a recovery had, as upon any other contract. On this proposition, they cite *Simpson v. Cochran & Cherrie,* 23 Iowa 81; *Perry & Townsend v. Saunders,* 36 Iowa 427, 429; *Weiser v. McDowell,* 93 Iowa 772, 774, 775; 15 Ruling Case Law 573. See, also, *Matson v. Matson,* 186 Iowa 607, and cases; *Stone v. Bayley,* 75 Wash. 184 (48 L. R. A. [N. S.] 429, 432). We

3. DIVORCE: modification of contractual decree.

think this must be so, under the circumstances of this case. As said, appellees contend that, since the original decree was more specific as to amounts, defendant's refusal to perform, after demand, authorizes the entering of the later decree in this case, fixing the amounts that defendant should pay. It seems to us that there is no other way by which the provisions of the decree in this respect can be enforced. This being so, we think it eliminates some of the questions argued by appellant at considerable length. It appears to us that his position really is that, if he pays for their education while away from home, at school and college, under the contracts and the decree, he should have something to say as to the "plans and arrangements for the education," etc. In view of the record, which will be referred to later, we think this is and ought to be so. There was some friction when the girl was quite young, in regard to her having dresses which were too expensive, and too fashionable to meet the requirements of the school authorities, and in regard to a chaperon, etc., in case she should attend school at a distance.

It will be observed that this contract does not relieve defendant from his primary duty to support the children, at least during their minority. Appellees contend, in substance, that, since a college education is usually had after a student's majority, and since defendant had agreed to pay for a college education for his children, which agreement was carried into the decree, defendant is liable for their college education, even after they attain their majority. Whether this is so, we take it, is really the vital point in this case.

Original notice of the divorce suit was served upon the defendant in Chicago, Illinois, by the sheriff, on February 11, 1915. On March 9, 1915, plaintiff filed an amendment to her petition, reciting that the plaintiff has but little property in her own right, and is delicate in health, and has no trade or occupation, and that defendant is possessed of personal property consisting of stock in the C. A. Dunham Company, and the homestead of the parties (describing it);

and praying that she be allowed the costs and the homestead of the parties, as permanent alimony, and for such other and further relief as is prayed in the original petition. The original petition does not refer to the property of the parties, either personal or homestead; and, while the prayer asked general equitable relief, it specifically asked only that she be divorced, and that she be awarded the custody of her two children. We take it that the purpose of the amendment was to make the petition more specific in regard to the property, and in accordance with the written agreement.

It is suggested by appellant that no leave of court was given to file such an amendment. But we understand the rule to be that an amendment will not be stricken for want of leave, if leave would have been given if

4. PLEADING:
failure to
obtain leave
to amend.

asked. At any rate, no motion to strike was made, and the amendment remained a part of the record, and was germane to the allegations of the original petition. The attorneys designated in the written agreement appeared for the defendant. There is no claim that Binford & Farber did not have authority to appear for the defendant. The record shows that they did have such authority, so that the decree was more than a mere judgment *in rem*. The case was tried March 12, 1915, and the decree entered March 22d, and it recites that plaintiff appeared in person, and by C. B. Bradshaw and H. C. Lounsberry, her attorneys, and that the defendant appeared by Binford & Farber, his attorneys. No pleading was filed for the defendant, and his default was entered. Plaintiff was given the general care and custody of the two children, with reasonable opportunity for defendant to see and visit them. The decree further provides:

"That the defendant is to pay all the expenses of each of the said children while they are away from home of their mother at school or college, and shall pay all bills that may be incurred for them in case of sickness or other extraordinary necessary expense, until each of the said children is of legal age, or self-supporting. * * * That the defendant shall have the right to make such reasonable plans and ar-

rangements for the education of said children as is con-
sistent with the conditions and circumstances, and to have
the same followed and carried out, and the plaintiff is to
properly educate the said children both in the grammar and
high schools, and to give them such further education as is
consistent and necessary for them; and, if the plaintiff shall
neglect to provide such education, the defendant shall be
permitted to carry this provision into effect."

The decree then gives the wife the homestead, furniture,
and electric car. The decree does not mention the two items
of $15,000 each of stock, but does provide that the plaintiff
shall have no further interest in defendant's property than
is provided for her at the time of the rendition of the
decree. On March 27, 1915, the plaintiff receipted to Bin-
ford & Farber, defendant's attorneys, in a long receipt, cov-
ering three pages or more of the abstract, the substance of
which is that she received property in conjunction with the
settlement in the stipulation of January, 1915. She receipts
for a quitclaim deed, as provided in the contract and de-
cree, abstracts, insurance policies, 150 shares of preferred
stock, the certificates of which were assigned to plaintiff by
C. A. Dunham, in compliance with the terms of the stipula-
tion and decree; also, 150 shares, which certificates were
assigned to a bank, trustee, for the use and benefit of said
Minnie Rankin Dunham "and the children of said parties,"
in compliance with the terms of said stipulation and the
terms of a trust agreement executed by the parties and the
trustee. Other property is receipted for, but such is not
now material. The receipt as to the words last quoted is
broader than the contract, and it cannot be justly claimed,
under the record, that it superseded, in any way, the pro-
visions of the contract upon which the decree was based, as
to their property rights. It will be noted that the decree
does not fix the amounts that defendant is to pay for the
support and education of his children, and it could not well
be fixed, perhaps, in the first instance; but, defendant hav-
ing failed to comply with the terms of the decree in these
respects, this action is brought by the plaintiffs, to fix the

amounts, and for judgment. This is what the trial court did.

2. Having now stated the conditions leading up to the divorce, the contracts in reference thereto, and, in a general way, the claims of the parties thereunder, we come to the issues presented by the pleadings filed in the original case. It was stipulated that defendant is financially able to meet any order asked for herein. That this proceeding is not an independent action, but is filed in the original case, is quite clear from the record. The first parties named in the title are those only who were parties to the divorce suit. Appellant speaks of the present proceeding as auxiliary, or ancillary, and contends that this is an effort to modify the original decree; that this may not be done, under Code Section 3180 (Compiled Code, Section 6629); and that there is no provision in the statutes authorizing such proceedings. The petition herein is entitled, to modify the original decree, and make proper provisions for the children. The modification is asked because of changed circumstances. Appellees contend that the rights of the children are auxiliary, and grow out of the rights and liabilities of the parents, and we think· they are. The printed record is more than 750 pages. Appellant's argument is about 350 pages. The pleadings are quite voluminous, and more than 100 pages of argument are taken up with reference to the pleadings. It is somewhat difficult to state the circumstances clearly, without taking up space unduly. Stated as concisely as it is possible to do, the record is this:

The abstract sets out the original petition in the divorce case, the contracts, decree, and so on. The first petition was filed herein on September 18, 1917. It was brought by the daughter Winifred and the son Aubra, by Minnie R. Dunham, natural guardian and next friend. At that time, the children were both minors; but Winifred became of age before the trial, and, as hereinafter stated, she filed an amendment, coming in personally, and asked to be substituted as a party plaintiff. In a general way, this petition recites the divorce proceedings; alleges that the conditions have ma-

terially changed since the decree, and wherein; alleges that the decree granted is indefinite, uncertain, and lacking in the following respects:

"Same makes no definite provisions for the support of the minor children, these applicants. Same makes no provision for their support and care when at home. Same makes no definite provision for a college education. Same does not define what constitute extraordinary expenses, and what are ordinary expenses."

It also alleges that defendant has an income of $20,000 per annum, and is able to provide for his children in a manner suitable to their station in life, and that the original decree should be modified and corrected in the following particulars, among others: Present proper provision for the children's support should be made for each child. Present proper provision should be made for their support while a high school education is being acquired, at Marshalltown, Iowa. Proper provision should be made for a college education for each of said children. Judgment should be entered against C. A. Dunham for expenses accrued, or necessary in the future.

The petition asked for an order or judgment for the support of the children during minority, which defendant should have supplied, and an allowance for a college education; also, asked to recover for expenses of Minnie R. Dunham, in the sum of $307.82, which she had expended for the children under the original decree, and which defendant should have paid; also, attorney's fees for the attorney of the minors, as wards of the court.

This petition was attacked by the defendant by motion to dismiss, for want of equity. Appellant now contends that the motion was, in effect, a general demurrer, and also a special demurrer. Defendant also made motions to strike certain parts of the petition, and it is said that the motions to strike were also, in effect, general and special demurrers to parts of the petition. We shall state the grounds of these motions in a general way now, and more fully than hereafter, since substantially the same attack was made on

pleadings subsequently filed, with, perhaps, some additional grounds. The grounds of the motions, stated as briefly as possible, are that the minors were without capacity to institute a suit in equity by issuing original notice, or to establish the relationship of attorney and client between themselves and their attorney; that the divorce was between plaintiff Minnie Dunham and the defendant, and the children were not such parties; that no cause of suit was vested in the mother as next friend, because no cause of suit was vested in the wards; that the petition does not identify the plaintiffs, for that the children, by their next friend, purport to be the plaintiffs, and that Minnie Dunham personally, and not as next friend, is the plaintiff, and that the children personally, and not by representative, purport to be plaintiffs; that the petition consists of conclusions and opinions on the part of the pleader; that the facts well pleaded do not exhibit a cause of action; that the divorce proceedings were void *ab initio*, except the order granting divorce; that they were void for lack of proper service of notice upon defendant in Iowa, and lack of facts properly pleaded in the divorce petition; that no cause of suit could be vested in anyone for the modification of a void decree. Appellant seeks, also, to strike allegations in regard to the alleged conduct of defendant and the lady now his wife, as scandalous, and alleges that other allegations are immaterial and surplusage; that, because the provisions of the decree are void, a court of equity has no authority to compel a parent to pay for anything on account of the support of infant children, except usual expenses, and that the payment of expenses asked for are not within the parental duties of defendant; that the allegations concerning medical attention and dentists' and oculists' bills are not specific, but in the nature of conclusions; that the prayer for relief is ambiguous and unintelligible; and so on. The motions were all overruled. Some of the grounds are wholly untenable.

We take it, the gist of the matter is that it is claimed that no action of this character may be maintained. The

defendant answered. We shall set out the contents of this answer somewhat more fully than later answers to subsequent pleadings, because the allegations, for the most part, are quite similar. The answer denied generally, and, among other things, admitted the divorce and its validity, but alleged that other provisions of the divorce decree were invalid; admitted that his income was $20,000 per annum; denied the alleged slanderous allegations; averred the performance by him of the void orders in the decree of divorce; averred that he had entered into a stipulation providing for the support of his two children, and that he had performed said stipulation according to its terms; alleged that he had provided an income of $1,200 per year from $15,000 of stock for the support of said children, and that such sum was ample; and asked that said income of $1,200 be used, in so far as it is necessary, for the exclusive support of the children, as was mutually intended.

It is conceded by appellant, in argument, that the answer really presented but two issues, other than the jurisdictional questions: First, as to the character of defendant and his present wife, which we have disposed of; and whether defendant made adequate provision for the support and maintenance of his infant children, by the agreement, and whether defendant had performed his duty thereunder, and such other parental duties to his children as were required, under the stipulation or under the law.

During the trial, and on August 1, 1918, plaintiffs filed an amendment to the petition, in which Minnie R. Dunham, personally, and Winifred E. Dunham, personally, and Minnie R. Dunham as next friend for the son, made the allegations of the petition more specific in certain respects, and alleged that Mrs. Dunham had been compelled to pay out for the children, while they were away from her home, certain moneys which the decree provided the defendant should pay; and she asked judgment for herself for $307.82, and stated that the items of the account are for railroad fare for the daughter to school, freight, doctor's bills, two dresses,

**5. INFANTS:** action by next friend: abatement.

dentist's bill, oculist's bill, and so on. The amendment further alleged that, prior to the divorce, there were negotiations and representations to the plaintiff and the court that the children, who were then in school, and neither of whom would graduate from school until of age, should receive a college education, at the expense of defendant. The provisions of the contract and the decree heretofore set out are then referred to, and it is alleged that defendant refused to pay for a college education, because he claimed that all obligations on his part would cease when the children reached their majority, contrary to the contract, decree, and the representations made at the time the divorce was granted. It is prayed that the decree be modified to conform to the situation as it was understood by the parties and the court, at the time the divorce decree was granted, and that any ambiguity therein be corrected, and that the decree in the present case provide for a college education for the children, at defendant's expense. It is also asked that judgment be entered in favor of plaintiffs against defendant for the proper amounts, as shown by the evidence, and for general equitable relief.

Defendant moved to strike the amendment, on the grounds, among others, that Minnie R. Dunham was a new plaintiff, and presented new issues; that the amendment comes too late; that the plaintiffs cannot change the parties and try a new case as to new parties; and that it now affirmatively appears that Winifred had become of age. The grounds of the motion were elaborated at some length, and some additional grounds were set out. Defendant also moved to strike out the name of Minnie R. Dunham as a party, for that defendant was required to try out a new cause, with a new party, and that the amendment in that respect does not meet the proof; moved to strike the allegations in regard to the proceedings leading up to the decree, for the reason, among others, that the decree is final, except as it may be modified by Section 3180; also moved to strike the original petition and the amendment as to Winifred, for

the reason that it affirmatively appears that she had become of age. The motions were overruled.

The argument, as we understand it, in regard to Winifred at this point, is that there was no authority for the mother to bring the suit as next friend for her; and that, Winifred having become of age before the said amendment was filed, the action as to her abated before the filing of the amendment; and that, therefore, there was no basis for the amendment.

Possibly a plea in abatement, after she arrived at majority, and before the filing of the amendment, might have been well taken; but we think the action did not abate automatically. There was no plea in abatement. There was no application for a continuance. Proof had been introduced, tending to establish the claim of Mrs. Dunham. Defendant demurred to the petition, as amended, on the ground that there was a misjoinder of parties and causes of action, because of the joining of Minnie Dunham. This struck at the entire petition and the amendment, and was overruled. Defendant then demurred to the amendment for the same reasons, and this was overruled. Thereupon, and on the same day, defendant filed an amendment to his answer, setting up some of the things he had theretofore set up, and alleged, among other things, that all items of expense which were properly incurred and presented to him had been paid; that prior negotiations were merged in the decree; and that Minnie R. Dunham is not a proper party to the action to modify the decree; and that she was not a party hereto, until the filing of such amendment. He also pleaded misjoinder of parties and causes of action; that Winifred had become of age, and that the petition and amendment as to her should be dismissed; that, by the terms of the contract executed January 18, 1915, and by the decree, the obligation of defendant to provide for the children terminated, as to each one, when he or she reached majority; that there has been no such change since the divorce decree as to warrant the court in rendering a finding or decree in the present action in favor of Minnie R. Dunham.

This hearing was had before the same judge who granted the decree of divorce. By its decree, entered December 30, 1918, the court found that plaintiffs were entitled to the relief demanded in their application for a modification, interpretation, and construction of the decree of divorce, and that the plaintiffs' claim in reference thereto had been established by the proof, and found against defendant in the affirmative prayer of his pleading that the income of $1,200 from the stock be devoted to the exclusive support of the children, the court finding that such was not the contract between defendant and his wife; that the decree and stipulation did not relieve defendant of his primary duty to support his children; that Minnie R. Dunham has contracted expense and paid out funds for the benefit of the children which it was the legal duty of the defendant to pay; that, though a portion of this expense was incurred after Winifred had reached her majority, this was on account of defendant's wrongful refusal to perform his legal duty during her minority, and that defendant's wrongful refusal during her minority may not defeat the rights of plaintiff Minnie now; and that a court of equity will compel defendant to do now what he should have done during her minority. The court therefore allowed Mrs. Dunham personally $307.82, with interest; and found that, under the stipulation and decree, defendant was not relieved from his primary duty to support his children until their majority, and that he had not performed that duty, but that this duty had been performed by Mrs. Dunham, and she was allowed her claim in part, to wit, support for Winifred, three months, at $50, or $150, and for Aubra, 17 months, at the same rate, or $850. The court refused to allow support for the time prior to the filing of the application, and terminated the allowance for Winifred's support at her majority; the allowance for the support of Aubra was ordered continued until his majority; a college education was ordered for Winifred and Aubra, at $675 per year for each; attorney's fees for attorney for the minors were fixed at $500. In short, the court required defendant to support his

children during minority, and to give them a college education, even though this could not be done during their minority.

Appellees claim that the court did not allow them as much as they are entitled to; but they have not appealed. We shall not go into the evidence. It is sufficient to say that, so far as the amounts are concerned, the court was well within the evidence, and, as to some of the items at least, within estimates given by the defendant himself.

3. We shall spend but little time on the claim made by appellant below that, because Mrs. Dunham, near the close of the trial, came into the case personally, first, that the entire case should be dismissed as to all parties, and then, that the amendment should be dismissed or stricken. There is little argument on the proposition, and appellant seems not to rely seriously upon this point. Appellant's next proposition is that Mrs. Dunham, having appeared only as next friend and guardian in the petition herein, is estopped from claiming that she was present in court under said petition in any other capacity. That might be true, if the case stood on the original petition herein alone. But there was an amendment. They say, also, that the existence and performance of said contract barred her from introducing any of the subject-matter of the contract into the divorce proceedings, and that this is a bar in the nature of an equitable estoppel. This assumes, in part, that there had been a performance by the defendant, which, the evidence shows, is not the fact. Whether she was barred from introducing the subject-matter of the contract into the divorce proceedings, will be covered by consideration of other questions later in the opinion.

Appellee contends, in regard to this matter, that, this being a suit in equity, and all parties being in court, equity will not send one of the suitors, under the circumstances of this case, who shows that she is entitled to relief, to another forum; that no motion to transfer was made, and that it was the duty of the trial court to grant full relief, and

6. EQUITY: once-acquired jurisdiction.

enter the proper judgment or judgments, under the principle
that equity, having obtained jurisdiction of a controversy,
will retain it, and do full justice, and end the litigation, if
possible, even though, in so doing, it may pass on matters
ordinarily cognizable at law. They cite *Illinois State Bank
v. Boysen,* (Iowa) 168 N. W. 786 (not officially reported).

We think the following cases also sustain the proposi-
tion: *Howard v. National F. D. H. Assn.,* 169 Iowa 719;
*Fallers v. Hummel,* 169 Iowa 745; *Bronson v. Lynch,* 181
Iowa 654, 659. As having a bearing, see, also, *Hume v. Inde-
pendent School Dist.,* 180 Iowa 1233, 1247; 16 Cyc. 114; and
*Fisher v. Trumbauer & Smith,* 160 Iowa 255, 264, where a
claim at law was filed in an action properly brought in
equity, and it was held that plaintiff was entitled to a hear-
ing of the entire matter in equity. In the instant case, the
petition was properly brought in equity, in the original
equity divorce case. The equitable issues, or at least some
of them, were sustained by the proof. Mrs. Dunham, in
the first ancillary petition, had asked to recover for the
same items of money expended by her, but had asked it as
next friend. By the amendment, she asked that that part of
the recovery be awarded to her personally. The entire mat-
ter, and the claims of all the parties plaintiff, grew out of
one transaction: the marriage of the defendant and his wife,
the divorce, and the rights of all the parties, growing out
of the marriage and the divorce. It may be possible that
Mrs. Dunham could have recovered all these amounts, both
for herself and the children, because she was the sole plain-
tiff in the divorce case, and that the children were not neces-
sary parties to this proceeding. The children were, how-
ever, vitally interested in the result of the suit; and, even
though they were not necessary parties, it is clear to us
that they were proper parties.

This suit was instituted primarily by the children: that
is, by their guardian and next friend, for their benefit. The
amount of the recovery and the purposes therefor would

have been precisely the same, so far as the defendant is concerned, had the mother recovered in her own name for them; so that the defendant is, so far as we can see, in no manner prejudiced. Furthermore, by the amendment the daughter asked to recover her part personally, because she had arrived at her majority. If she was a proper party from the beginning, by her guardian and next friend, it was appropriate for her to personally ask for such relief; otherwise, the action as to her would have abated, under defendant's theory, and she would have been precluded entirely from a recovery for her college education; and this, as we have said, is really the most important point in the case.

4. Whether plaintiffs can, under Section 3180, maintain this action to modify the divorce decree, is argued by appellant at some length. We shall not go into the discussion of this question as fully as we otherwise would, but for the matter to be now stated. As we have said, we are satisfied that defendant is willing to give both his children a college education, provided that, when they are away from home, he, furnishing the money, has something to say about the matter, or, as the contract and decree provide:

"That the defendant shall have the right to make such reasonable plans and arrangements for the education of the said children as is consistent with the conditions and circumstances, and to have the same followed and carried out."

We think this applies to a prior provision:

"That the defendant is to pay all the expenses of each of the said children while they are away from the home of their mother, at school or college," etc.

We think this gives the defendant some right, though not the exclusive right, to say where they shall be educated, what their education shall be, and so on. The mother and the defendant, for the best interests of the children in this regard, ought to be in agreement, if this be possible, consulting, too, the reasonable wishes of the children, their inclination and adaptability for any particular business or

profession, and an education to that end.   The record shows that there has been some difference of opinion in regard to these matters; and, if the parties cannot agree, there ought to be some modification of the decree in this respect, in order that the rights of all parties may be preserved, and the children properly educated, as contemplated; or, if not a modification, that, at least, the decree hold the matter open for determination by the court, if that be necessary.   The trial court may have overlooked this feature of the situation.   Code Section 3180 provides:

"When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right.   Subsequent changes may be made by it in these respects, when circumstances render them expedient."

Mrs. Dunham is not asking any increase or change in the alimony awarded to her, nor do the children.   As to the children, it is asked that the decree be changed so that it may be enforced.   We think there were subsequent changes in the conditions, subsequent to the entry of the decree, or, in the language of the statute, the circumstances rendered subsequent changes in the decree expedient: indeed, not only expedient, but necessary, because defendant refused to carry out the provisions of the divorce decree, particularly in regard to the college education.   It may be true, as contended by counsel for defendant, that, in defendant's testimony, he did not flatly refuse to pay for the college education of the daughter, but was willing to pay upon certain contingencies. But though, at different times, he has expressed a willingness to pay for the girl's education, he has not paid it; and further, in the district court and here, he is denying all liability therefor, not only as to the daughter, but as to both children.   That is really the principal matter being contested.   We think appellant is not in a position to say that he has not refused to comply with the decree, and especially so in regard to the college education.   *Bobzin v. Gould Bal. Valve Co.*, 140 Iowa 744; *Goshen Mfg. Co. v. Myers Mfg. Co.*,

242 U. S. 202 (61 L. Ed. 248, 251). When the divorce decree was entered, it was to be presumed that defendant would perform his part of the decree, even though the amounts were not definitely fixed, without coercion, either by contempt proceedings or execution. The provisions as to future payments, schooling, and college education, were not made specific as to the amounts, and they could not have well been so. Upon defendant's subsequent refusal, the decree in these respects became ineffectual. In order that the decree might be enforced, it was expedient, under the circumstances, that changes therein should be made in the respects authorized by the statute, which are in regard to the children, property, parties, and the maintenance of the parties. True, these children were not parties to the divorce suit,—not directly,—but their rights grow out of and are dependent upon the rights and duties of the parents, who were parties; and the statute authorizes the court, in such a suit, to make such orders as may be right, in relation to the children. The children may not be deprived of their rights because of the dissension of their parents, nor may the duties and liabilities of the parents be evaded because thereof. 9 Ruling Case Law 480. After defendant's refusal, in order that the decree might be enforced, it became expedient to fix, by evidence, as well as that could be done, the amounts he should pay, and to enter judgment therefor. Any subsequent order, without fixing the amount and the entry of judgment, would add nothing to the original decree. The case was in equity, and plaintiff also asked that the original decree be interpreted and construed, and for general equitable relief. The issues were broad enough, and the power of the court in equity broad enough to adjust and settle the rights and liabilities of all the parties, growing out of the divorce proceedings.

It is contended by appellant, and cases are cited as holding, that the parties were bound by their divorce contract. We do not understand appellee to dispute this. It is further said by appellant that the court has never held that the statute in question authorizes any person other than the

divorced husband or wife to act as plaintiff in a suit for a modification of the decree. We think it was so held in *Gould v. Gunn*, 161 Iowa 155, 162, where the action was both upon the contract and the decree. The adverse parties did not contend otherwise, however, in that case. Appellant cites many cases which have been decided under Section 3180, under different circumstances, to the general effect that the decree is conclusive, and should not be changed unless substantial reasons are shown, or that justice and equity demand change; that the decree is conclusive as to the circumstances of the parties at the time it was rendered; that the decree in regard to the custody of the children will not be modified, unless there are changed conditions; that the statute does not contemplate a new trial, or to retry the same case. Among other cases relied upon by appellant is *Kinney v. Kinney*, 150 Iowa 225, 228, which cites a number of our cases, which are separately relied upon and argued by appellant. The *Kinney* case was where the divorced wife was in court, demanding an allowance to herself out of her former husband's property, to be used in the support and maintenance of the children. No material change in the circumstances of the parties was shown. It was said that, if such relief was reasonably required, the decree of divorce should have granted it, and because plaintiff had accepted the measure of relief given by the divorce, the mere fact that she ought to have had more, without showing any material change of conditions, was not a ground of modification, or for increase of the allowance; and further, that, under the circumstances of that case, it would be presumed that the alimony awarded was fixed with reference to the obligation which plaintiff assumed, to support the children, and that the amount so paid and accepted was agreed to as defendant's equitable contribution to the support of his children, as well as the wife's share of the estate. In the instant case, the decree of divorce did grant the things now claimed for, except that the amount of the education of the children was not fixed. In the instant case, we are not required to presume that the amount fixed in the

decree as going to Mrs. Dunham was defendant's full contribution for the children, for the reason that the record and the decree itself clearly show that such was not the fact. The *Kinney* case further held that the decree did not absolve the defendant from his duty to his children, and that performance of that duty may doubtless be enforced by the ordinary and usual remedies employed in such cases, whenever their necessities are such as to reasonably require it.

It is contended by appellant, and conceded by appellees, that the parents of infant children are without power to enter into a contract between themselves which will relieve either or both of them of those parental duties due the children, and which the state requires them to perform (*Slattery v. Slattery*, 139 Iowa 419, 422, and the *Kinney* case, supra) ; and that the court is not bound by the stipulation of the parties. *Delbridge v. Sears*, 179 Iowa 526. The court may do so, however, if the contract appears fair and reasonable. 19 Corpus Juris 251. Counsel also agree to the proposition that courts should carefully consider the welfare of the children, and that, upon such applications, the trial court is vested with a reasonable discretion, due to the fact that a human life is likely to be involved. *Linquist v. Linquist*, 148 Iowa 259, 263. Appellees contend that the primary obligation of the father is to provide for the children— educate, support, and maintain them; and that the giving of the children to the custody of the mother does not absolve the defendant from this obligation. We do not understand appellant to dispute this proposition, at least as to the period of the minority of the children. They also contend that it still remains his duty after divorce, unless, perhaps, as in some of the cases, the amount awarded covered such matters. *Schooley v. Schooley*, 184 Iowa 835; 9 Ruling Case Law 479, 480, 482, 484. In 14 Cyc. 811, 812, the doctrine is laid down that a court of equity has the power to make an order directing a father to provide for a minor child, long after the decree is rendered, where the decree contains no provision on the subject. We think that, by the

8. DIVORCE: support of children.

contract, which was carried into the decree, defendant obligated himself, as a continuing obligation, to give the children a college education after their majority. In *Stone v. Bayley,* supra, a father, in a divorce case, contracted for the support of a minor child after his death. The court said:

"That such a provision for the support of a minor child, when contained in the decree of divorce, survives, as against the husband's estate, subject only to the future orders of the court, can hardly admit of serious question. While it is true that, at common law, a father was under no legal obligation to provide support for his minor children after his death, we can conceive of no sound reasons of public policy to prevent his so doing. He can by contract create a continuing debt in favor of strangers which would constitute a claim against his estate; then why not as in favor of his children?"

It follows, we think, that, defendant having agreed, by the contract and the decree, to give his daughter a college education, this duty and contract continue until performed, whether he dies, or whether the daughter reaches majority. This applies to both the children in this case. As a general rule, students do not obtain a complete college education during minority. This is a circumstance, we think, tending to show that it was within the contemplation of the parties that defendant should pay for their college education after majority.

5. The money allowed Mrs. Dunham for support of the children during minority, and for dental and other bills for the children, were expenses which the agreement and decree required defendant to pay. He did not pay them, and they were paid by Mrs. Dunham. This being so, there is an obligation on the part of defendant to pay her, which ought to be enforced by judgment. The court properly allowed these amounts. 14 Cyc. 812, Note; *Gilley v. Gilley,* 79 Me. 292 (9 Atl. 623, 1 Am. St. 307); *Pretzinger v. Pretzinger,* 45 Ohio St. 452 (15 N. E. 471, 4 Am. St. 542); 19 Corpus Juris 354, Section 814, Note 2; *Young v. Young,*

9. DIVORCE: contractual decree *in re* support of children: enforcement.

179 Iowa 1259. This last-named case also deals with the question of a college education of the children, under a stipulation. As said, defendant and his son seemed to be on friendly terms, and it is perhaps not likely that there will be any friction in regard to sending the son to college at defendant's expense. But, since defendant is contesting that matter, it is advisable that the decree determine that matter, and possibly prevent further litigation as to him.

6. As to attorney's fees, the court found that, for the personal recovery made by Mrs. Dunham and by the daughter, after majority, that they should each pay their attorney's fees; and as to the remainder of the application, the court fixed the allowance at $500. These fees were allowed for services for the minors, as we understand it, for extraordinary necessary expense, and as wards, and because they were wards of the court. The contract and divorce decree provide that defendant is to pay all bills that may be incurred for them in case of sickness, or other extraordinary necessary expense, and so on. There is no dispute as to the reasonableness of the amount allowed. There is little argument on the point. We think the allowance was proper. For a like reason, the application of plaintiff's attorney for an additional allowance for services in this court is sustained, and he is allowed $200, in addition to the $500 allowed below.

10. DIVORCE: contractual decree *in re* "extraordinary" expense: attorney fees.

7. The judgments are affirmed. But, as said, we think defendant should be permitted to have some say in regard to the education of the children. We do not mean by this that he shall be permitted to dominate in the matter: his reasonable plans therefor should be carried out. It is to be hoped that the differences between the parents may not further operate to the disadvantage of the children, in regard to their education. The time for college will soon pass. Without going into the details, it appears that, when the daughter first attended school, at eastern schools, she was quite young, probably 15 or 16 years old. Counsel seem to differ somewhat as to her age, or when she attained her ma-

jority. As we understand the record, she was born September 23, 1900, and it is argued that she became of age September 23, 1917. It appears that at first she wrote her father affectionate letters, but later became incensed against him, due in part, perhaps, to the father's interference with her dresses, which had been prepared for her use at school. The rules of the school favored simple dresses, and discouraged extravagance. We are inclined to think that perhaps some of her dresses were unsuitable. The daughter left the school, soon after the commencement of the school year, and after the tuition and expense for the year had been paid. Defendant sent her a wrist watch, with what seems to us a kindly and affectionate letter. She returned the watch, and exhibited bitterness. The father thought a chaperon was necessary for her, and that her mother should be with her at Leland Stanford University. As said, we do not propose to go into details of this, nor state exactly the situation, except in a general way, to show the necessity of guarding this point. The case will be remanded, with directions to the district court to appoint some suitable, disinterested person to determine these matters, in case of disagreement, or to keep the case open, in order that applications may be made, if necessary, and that the court may determine any dispute.—*Affirmed.*

Weaver, C. J., Evans and Salinger, JJ., concur.