RICHARD L. LaBELLE v. ESTHER A. LaBELLE.

223 N. W. 2d 400.

November 8, 1974—Nos. 44386, 44557.

100

*MacIntosh, Commers & Michaelson, Lawrence R. Commers,* and *Paul F. Wojciak,* for Richard T. LaBelle.

*Dorsey, Marquart, Windhorst, West & Halladay, Jan Stuurmans,* and *Faith L. Ohman,* for Richard L. LaBelle.

*Gray, Plant, Mooty & Anderson, Bruce D. Grussing,* and *James R. Lande,* for Joanne LaBelle White, executrix of the estate of Esther A. LaBelle.

Heard before Sheran, C. J., and Peterson, Kelly, Yetka, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

Appeal from orders of the Hennepin County District Court construing and interpreting the terms of the judgment and decree of divorce, dated June 18, 1959, various amendments thereto and trust agreements incorporated therein. Defendant, Richard Leon LaBelle, has appealed; plaintiff, Esther Annabelle LaBelle, has filed a notice of review; and petitioner Richard Thomas LaBelle has appealed from the court's separate order of March 30, 1973. All matters have been consolidated for hearing. Affirmed.

After 18 years of marriage, Richard Leon LaBelle (defendant) and Esther Annabelle LaBelle (plaintiff) were divorced by a judgment and decree of divorce dated June 18, 1959, entered pursuant to a stipulation dated May 13, 1959, between the parties and approved by the court. The terms of the stipulation were expressly made a part of the judgment and decree. The judgment

and decree granted a divorce to plaintiff, awarded alimony in the amount of $750 per month, awarded the homestead to plaintiff, granted custody of the two children, Richard Thomas, at that time age 17, and Joanne Barbara, then age 13, to plaintiff; arranged child support; ordered defendant to provide for the children's education; required defendant to maintain Blue Cross and Blue Shield coverage for plaintiff; provided for the disposal of certain personal property and insurance; and incorporated and approved the "Trust Agreement" between the parties.

The pertinent paragraphs of the divorce judgment and decree for our examination are included herein.

Paragraph 2 dealt in part with the obligation for child support:

"2. That defendant be, and hereby is, ordered and directed to pay to plaintiff as alimony the sum of Seven Hundred Fifty Dollars ($750.00) per month, commencing on the 10th day of the month next following the date hereof, which payments continue to be made by defendant to plaintiff until her death or until her remarriage, whichever shall first occur, without decrease or increase on account of the minor children of the parties becoming of age or otherwise emancipated. That plaintiff support said minor children of the parties from her said allowance of alimony in the sum of Seven Hundred Fifty Dollars ($750.00) per month, and there is no separate award of support money for the support of said children, except as may be paid by defendant under paragraph 5 hereof * * *."

Paragraph 5 provided:

"5. That defendant be, and hereby is, further ordered and directed to provide for, and pay the cost of, further education of each of the minor children of the parties hereto, including attendance of either or both of said children at a university, college or other institution of higher education, or the equivalent thereof, or attendance at any trade school or other post high school training institution selected by either of said children.

That defendant is further ordered and directed to provide and pay for medical, psychiatric and dental services for said children, of which defendant has previously approved, which approval shall not be unreasonably asked by plaintiff nor unreasonably withheld by defendant; provided, however, that approval by defendant shall not be required in the event of an emergency. That defendant is further hereby ordered and directed to keep and maintain in full force and effect Minnesota Hospital Service Association Blue Cross and Blue Shield coverage for the plaintiff, or otherwise pay for plaintiff's hospital, medical and surgical expenses until she remarries, in an amount equal to the benefits provided by said insurance coverage."

Paragraphs 9 and 10 concerned the stock in the LaBelle Storage and Moving Company:

"9.  That in accordance with the Stipulation heretofore executed between the parties hereto, on file and of record herein, and hereby approved by the above Court, all shares of the corporate stock of LaBelle Safety Storage and Moving Company of every class now owned by the defendant, together with any stock dividends thereon that may hereafter be declared and distributed upon said shares, and all interest in any shares of stock of whatsoever class, of said LaBelle Safety Storage and Moving Company to which said defendant may become entitled under that certain trust agreement executed on or about the 9th day of October, 1954, by and between George LaBelle, as settlor, and Northwestern National Bank of Minneapolis as trustee, shall be forthwith assigned, transferred and set over by said defendant to Henry E. Halladay, Robert E. Van Fossen and said defendant, Richard LaBelle, in trust nevertheless for the uses and purposes more fully set forth in that certain trust instrument which was executed on the 13th day of May, 1959, by and between said defendant and said Henry E. Halladay and Robert E. Van Fossen, an executed copy of which said trust agreement

was filed herein on the 17th day of June, 1959, and attached to said Stipulation as Exhibit 'A' and made a part thereof. * * *"

"10. That in the event the settlor and trustee in said trust agreement executed on or about the 9th day of October, 1954, between George LaBelle as such settlor and the Northwestern National Bank of Minneapolis as trustee, shall at any time consent to an amendment of said trust agreement in such manner as to provide that in the event said settlor predeceases said defendant, Richard Leon LaBelle, the principal of said trust estate shall be distributed to the trustees under the said trust agreement filed herein on June 17, 1959, and attached to said Stipulation as Exhibit 'A' thereto, said defendant, Richard Leon LaBelle, shall thereupon and forthwith likewise consent to said amendment, and execute any and all instruments necessary in order to place said amendment in full force and effect. That further, and in the event said trust be not so amended, and in the event said settlor, George LaBelle, shall predecease said defendant, Richard Leon LaBelle, said defendant shall forthwith execute and deliver any and all instruments necessary to transfer and assign to the trustees under the said trust agreement filed herein on June 17, 1959, and attached to said Stipulation as Exhibit 'A' thereto, all shares of stock or other assets which he shall then be entitled to receive from said trust so established by said George LaBelle as settlor, or which said defendant may receive, or be entitled to receive, from the estate of said George LaBelle."

Paragraph 9 which was amended three times during the course of the succeeding 9 years, now pursuant to the third amendment, dated June 25, 1968, provides:

"9. That in accordance with the Stipulation, Amendment to Stipulation and Second Amendment to Stipulation heretofore executed between the parties hereto and filed herein, and hereby approved by the above Court, and in accordance with the Third Amendment to Stipulation made and entered into the 24th day of May, 1968, heretofore executed between the parties hereto and

filed herein, and hereby approved by the above Court, all shares of the corporate stock of LaBelle Safety Storage and Moving Company of every class now owned by the defendant, together with any stock dividends thereon that may hereafter be declared and distributed upon said shares, and all interest in any shares of stock of whatsoever class, of said LaBelle Safety Storage and Moving Company to which said defendant may become entitled under that certain Trust Agreement executed on or about the 9th day of October, 1954, by and between George LaBelle, as Settlor, and Northwestern National Bank of Minneapolis, as Trustee, shall be forthwith assigned, transferred and set over by said defendant to Henry E. Halladay, Robert L. Van Fossen and said defendant, Richard Leon LaBelle, in trust nevertheless for the uses and purposes more fully set forth in that certain Trust Agreement executed on May 13, 1959, by and between said defendant and said Henry E. Halladay and Robert L. Van Fossen, * * * and as further amended by 'Third Amendment to Trust Agreement dated May 13, 1959', dated May 24, 1968, by said Richard Leon LaBelle, as Settlor, and said Henry E. Halladay, Robert L. Van Fossen, Richard Leon LaBelle, Richard T. LaBelle, Robert Perrault and Dale Snuggerud, as Trustees, an executed copy of which said 'Third Amendment to Trust Agreement' was filed herein on the 25th day of June, 1968, attached to said Third Amendment to Stipulation dated May 24, 1968, as Exhibit 1 and made a part thereof. That defendant be, and he hereby is, ordered and directed to make and execute said assignments of said stock in accordance with the foregoing, and said Trust shall take effect immediately as of the date hereof in accordance with the terms of said Stipulation; and defendant be, and he hereby is, ordered and directed to do and perform any and all acts or things required to be done and performed by him under the terms of said Trust Agreement as amended."

On June 18, 1959, the date of the divorce decree, the controlling interest in LaBelle Safety Storage and Moving Company (hereafter referred to as Company), 25 shares of Class A com-

mon voting stock, was owned or voted by George LaBelle, father of defendant. Paragraphs 9 and 10 of the divorce decree required defendant to transfer all shares of every class of stock that he had in the Company to the trust under the 1959 Trust Agreement. The decree further required defendant to transfer to this trust all shares of every class of stock to which he became entitled under a previously executed trust agreement between George LaBelle, settlor, and the Northwestern National Bank of Minneapolis, trustee, which is hereafter referred to as the 1954 Trust.

The 1954 Trust was created pursuant to a family settlement agreement which resolved issues arising from the creation of a trust by George LaBelle in 1951. The 1951 Trust provided for the transfer of 25 shares of Class A stock to defendant as trustee, but reserved the right in George LaBelle to vote the stock and to receive any dividends or other income from the stock. A lawsuit between George LaBelle and defendant arose out of this transaction. The suit was dismissed pursuant to the family settlement agreement which also provided for the creation of the 1954 Trust, the corpus of which included a number of shares of Class B common stock and common voting stock. Plaintiff was a party to the family settlement agreement, allegedly for the purpose of relinquishing her rights under the 1951 Trust and to aid in the creation of the 1954 Trust. The 1954 Trust further provided that in the event George predeceased defendant, the latter would be entitled to any undistributed income and to the principal of the trust.

On October 24, 1964, upon the death of George LaBelle, the Company redeemed his shares and thereby terminated his interest in the Company. Since George predeceased defendant, the stock held in trust passed to defendant according to the 1954 Trust. These shares then passed into the 1959 Trust in accordance with paragraphs 9 and 10 of the judgment and decree of divorce.

Amendments to the 1959 Trust Agreement substantially provided the following:

The first amendment altered paragraph 2 with regard to the disposition of the stock upon defendant's death. Paragraph 6 was also amended, so as to allow the trustees, as shareholders, to authorize the issuance of new voting stock to Richard Thomas LaBelle. Before this amendment, both Richard T. and Joanne B. LaBelle would have benefited equally, with only Richard T. receiving voting control upon defendant's death.

The second amendment again provided for the disposition of voting stock upon defendant's death, and gave purchase rights to two loyal company employees.

The final amendment integrated the 1959 Trust and the two prior amendments into a single document, provided for three additional trustees, including Richard T. LaBelle, and deleted the provision relating to the distribution of principal during the life of defendant and the provision that the trustees bear in mind in the exercise of their discretion that "it is the primary purpose of the within trust to preserve the principal thereof, as far as may be possible, for the benefit of said children after the decease of said Richard Leon LaBelle."

Defendant, shortly after the divorce, married one Marie Perry. The two executed an antenuptial agreement which provided that neither of the parties was to receive any assets of the other in the event of either's death. Plaintiff contends that the primary purpose of the 1959 Trust was to protect the stock for the children and to prevent Marie Perry LaBelle from obtaining any interest in the Company, and that plaintiff agreed to the amendments because she believed the children would benefit from them. The marriage of defendant and Marie Perry LaBelle was dissolved on January 30, 1970, in the Hennepin County District Court. Marie Perry LaBelle waived any right to alimony, but defendant was required to provide $300 per month as support for the minor child of that second marriage. On January 12, 1973, defendant remarried his second wife Marie Perry LaBelle, and

a second antenuptial agreement was entered into. His obligation to pay child support was terminated upon this remarriage.

Defendant contends that his net worth as of January 1, 1959, was approximately $198,371.51, and that his net worth as of October 26, 1972, had decreased to about $37,706.03. His annual income pursuant to an employment contract with the Company is $30,000 and from the dividends on the 309 shares of the Company's preferred stock is $1,545. He is 67 years old. On the other hand, plaintiff computes defendant's net worth in a different manner and claims that it is substantially greater.

Defendant on December 13, 1971, and again on April 10, 1972, served motions requesting an order deleting paragraph 9 from the June 18, 1959, judgment and decree; setting aside the Trust Agreement as amended and discharging the trustees; distributing the assets to defendant; or in the alternative, opening the judgment and decree and amending paragraph 9 to allow payment to defendant of all income from the trust and of such principal as necessary for his care, support, and maintenance. Further, defendant requested an order discharging Richard T. LaBelle as a trustee on the ground of demonstrated hostility. It is the order discharging him as a trustee from which Richard T. LaBelle, petitioner, has appealed.

In response, plaintiff moved for an order striking defendant's motion for modification of paragraph 9 as sham and for failure to state a claim upon which relief could be granted and further denying defendant's motion. Further, plaintiff moved for an order granting judgment against defendant in the sum of $18,-760.41 for unpaid support and medical expenses required under paragraph 5 of the divorce judgment and decree, i. e., that $11,478.91 had been spent in connection with Joanne LaBelle's education from 1960-72, and that $7,281.50 was owed for medical expenses incurred by plaintiff in her own behalf. These educational expenses are comprised of amounts which plaintiff paid and for which she sought reimbursement from defendant: From 1960-64, before Joanne reached majority, $3,794.60; and from

1970-73, after Joanne reached majority, $8,605.00. Of the pre-majority expenses, $75.58 was attributable to college expenses and $3,719.02 was attributable to a private high school tuition at Judson School.

On November 23, 1971, Richard T. LaBelle (petitioner) filed a petition in Hennepin County District Court requesting confirmation of the trustees of the 1959 Trust as amended. Defendant sought to quash this petition.

The order and memorandum of the court were issued on March 30, 1973, providing as follows:

(1)   The court denied the petition of Richard T. LaBelle to confirm the appointment of trustees and granted defendant's motion for an order discharging petitioner as a trustee. This denial of the confirmation of the trustees and the discharge of petitioner as trustee are the major issues raised by the petitioner's appeal;

(2)   The court expressly reserved ruling on the other motions of defendant for modification or termination of the trust, pending oral argument;

(3)   The court denied plaintiff's motion to strike defendant's motions dated April 10, 1972;

(4)   The court granted plaintiff's motions for judgment for unpaid medical expenses in the amount of $7,281.50 and support and educational expenses for Joanne LaBelle in the amount of $3,753.80, as well as costs, disbursements, and attorneys fees to be determined; and

(5)   The court reserved ruling on plaintiff's claim for educational expenses incurred on behalf of Joanne after she had reached majority.

To support these orders, the court explained that defendant's failure to keep insurance coverage in effect made him personally liable and that, since the court was without the benefit of evidence of previous coverage amounts, he would have to bear the full amount shown. On April 30, 1973, defendant moved for

amended findings of fact, conclusions of law, and order for judgment, with supportive affidavits, admitting medical expense liability for the amount that would have been due had insurance coverage been in effect.

On April 16, 1973, and May 18, 1973, the lower court heard arguments to determine those issues reserved. The lower court, in an order dated June 19, 1973, ruled as follows:

(1) Granted defendant's April 30, 1973, motion to amend and awarded plaintiff the following:

(a) $1,678.00 as medical expenses under paragraph 5, judgment and decree;

(b) $3,753.82 as educational expenses of Joanne LaBelle before reaching majority;

(c) $8,605.00 as educational expenses of Joanne LaBelle after reaching majority; and

(d) attorneys' fees, costs and disbursements in a sum to be determined.

(2) Denied the relief sought by defendant with regard to the opening of the judgment and decree as amended, setting aside the Trust as amended, or in the alternative, modification of the Trust due to defendant's changed circumstances.

Defendant appeals from this order.

There are distinct factual matters made relevant by the appeal of petitioner Richard T. LaBelle. In the appeal based upon the divorce decree, Richard L. LaBelle was the appellant, while in this portion of the consolidation he is the respondent. (For clarity we will still refer to Richard L. LaBelle as defendant.)

In August and September 1970, petitioner filed petitions for an appointment as a general guardian of defendant and for a judicial commitment for care and treatment of him as an inebriate. The latter petition was granted on September 8, 1970, while the former petition was denied on October 22, 1970. Defendant was discharged from commitment on November 3, 1970.

Petitioner then sought evidence of delivery of the trust corpus to the trustees, an inventory and accounting of trust assets, and

an accounting from the Company. Subsequent to this demand, defendant, without petitioner's knowledge, entered into a redemption agreement with the Company on October 12, 1971, amending an April 21, 1971, agreement to redeem all shares of stock held pursuant to the 1959 Trust.

When no response was forthcoming, petitioner filed a petition for an order confirming appointment of trustees pursuant to Minn. St. 501.33 through 501.38, and to qualify the trust.

In the order dated March 30, 1973, the court granted defendant's motion for an order discharging petitioner as a trustee on the ground of demonstrated hostility to defendant. Petitioner appeals from this order.

At the time of this action, Joanne LaBelle and petitioner were past the age of majority and self-supporting. Esther Annabelle LaBelle died on June 30, 1974.

1. The first issue raised by these appeals concerns the validity of the instruments incorporated into the judgment and decree of divorce. In our view, the enforceability of the trust agreement and support obligations as incorporated is dependent upon the legal nature of the settlement. Defendant contends that the agreement must be construed as the equivalent of a security device to insure performance of any obligation imposed by the judgment and decree. We cannot accept that theory.

The main thrust of the defendant's challenge concerns paragraphs 9 and 10 of the judgment and decree, as amended, which incorporates the amended trust agreement. The conclusion defendant reaches is that the court has gone beyond its jurisdictional powers. It is undoubtedly true that Minn. St. c. 518 limits the jurisdictional powers of the divorce court. For example, Minn. St. 518.17, 518.54, subd. 2, and 518.57, as in effect on the date of the judgment, limit the court's power regarding provisions for the care and maintenance of children to those who have yet to reach their majority. Further, defendant contends, the division of property is regulated solely by statute. See, Palmi v. Palmi, 273 Minn. 97, 140 N. W. 2d 77 (1966); Cloutier v.

Cloutier, 261 Minn. 324, 112 N. W. 2d 347 (1961); Sivertsen v. Sivertsen, 198 Minn. 207, 269 N. W. 413 (1936). Defendant concludes that "obligations imposed by a stipulation entered into by a divorcing couple which are not authorized by Chapter 518 are void." We must note, however, that there are situations which, though they do not expand the power of the court, permit action by the parties to go beyond statutory limitations.

Several other jurisdictions have allowed the parties by stipulation to provide care for children even after they have reached majority. In the recent Washington case of Bauer v. Bauer, 5 Wash. App. 781, 788, 490 P. 2d 1350, 1353 (1971), the court stated:

"* * * The divorce decree is, therefore, a final decree and we must ascertain the nature of the relief awarded by it based upon agreed findings and conclusions as actually entered. See Sutliff v. Harstad, 5 Wn. App. 539, 488 P. 2d 288 (1971); Callan v. Callan, 2 Wn. App. 446, 448-49, 468 P. 2d 456 (1970). The fact of petitioner's agreement is of controlling significance on the issue of the validity of the property aspect of the trust provisions for the children subsequent to attaining the age of 21. The petitioner had a right to do more for his children than the law required of him, whether or not the agreement was part of a negotiated over-all property settlement agreement occasioned by and incident to the divorce. It is not for us to frustrate a father's well-intentioned generosity for his children.

\* \* \* \* \*

"Even if it be assumed arguendo that the divorce decree is pro tanto void vis-a-vis the trust provisions for the children subsequent to their attaining the age of majority or earlier emancipation, it does not follow that petitioner is in a position to raise that question. In our opinion the doctrine of estoppel against taking inconsistent positions in litigation prevents petitioner from raising this question."

The court construed a similar problem in Robrock v. Robrock,

167 Ohio St. 479, 488, 150 N. E. 2d 421, 428 (1958), and concluded that—

"* * * such agreements should not be impaired for the reason that the court, if acting without such agreement, would not have the authority to impose such an obligation."

In Ovaitt v. Ovaitt, 43 Mich. App. 628, 204 N. W. 2d 753 (1972), the court, in referring to Robrock, concluded that there existed a bargained-for consideration and that, by accepting the benefits, the defendant waived the objection to the jurisdiction of the court conferring them.

The lower court heavily relied upon the Wisconsin case of Bliwas v. Bliwas, 47 Wis. 2d 635, 178 N. W. 2d 35 (1970). The relevant statute, cited by appellant there as controlling, limited the court's jurisdiction to provide for the welfare of minor children, as do the comparable Minnesota statutes. Despite this statutory limitation, the court enforced an order entered pursuant to a stipulation of the parties requiring the father to contribute to the education of a son beyond his minority. In so doing, the court relied, not upon the extension of the court's jurisdiction or the enforcement of a contractual obligation, but upon the theory of estoppel. See, also, 24 Am. Jur. 2d, Divorce and Separation, § 907.

2.    Therefore, in light of the nature of this agreement as a property settlement bargained for by the parties, we conclude that defendant is estopped from challenging the validity of the provisions incorporated into the judgment and decree of divorce. A review of the record indicates that defendant at least acquiesced in, if not solicited, the stipulation and the amendments thereto and, further, that he accepted the benefits flowing therefrom. Thus, although the lower court upon its own motion could not have ordered the provisions in issue, defendant is estopped from claiming that they are void.

We need not consider the validity of the three amendments to the 1959 Trust, for, although this court has held that the ex-

press consent of the donor and all beneficiaries is required before amendment of an irrevocable trust, In re Trust Created by Warner, 263 Minn. 449, 117 N. W. 2d 224 (1962), this issue has not been raised by nonconsenting beneficiaries.

3. Defendant then challenges the validity of paragraphs 9 and 10 of the judgment and decree with regard to the disposition of the shares of stock in the Company held in the 1954 Trust. In asserting the invalidity of those paragraphs, defendant contends that since his interest in the 1954 Trust was merely future and contingent, it was not a proper subject matter of the 1959 Trust. Minn. St. 1957, §§ 518.58 and 518.59 authorized the court to dispose of property owned by the parties at the time of divorce.

A careful consideration of the corpus and rights established by the 1954 Trust indicates that an alienable and vested future interest was created in favor of defendant. See, Simes, *Future Interests*, § 131. The instant facts are distinguishable from Cozik v. Cozik, 279 Minn. 91, 155 N. W. 2d 471 (1968). Further, defendant's actions of transferring the corpus of the 1954 Trust into the 1959 Trust following the death of his father in 1964, as well as his actions in acquiescing in the amendments of 1966, 1967, and 1969 create an estoppel situation.

4. Defendant then contends that if the provisions of paragraphs 9 and 10 are valid and enforceable, there now exists such a change of circumstances as to warrant their modification as well as that of the judgment and decree. Among the circumstances cited by defendant are the alleged lack of business acumen and judgment on the part of petitioner. Such, he asserts, is contributing to the necessity of this modification. Further, defendant contends that the nature of the trust agreement was that of a mere security device and the court is empowered by Minn. St. 1967, § 518.24 to exercise its continual jurisdiction over the agreement. However, defendant has failed to take note that a property settlement, such as evidenced here, is final when entered pursuant to a divorce. Minn. St. 518.64.

Defendant further contends that the attainment of the age of

majority by the children is one of the cumulative facts to be considered as evidence of a change in circumstances. Although the children have reached majority, that factor was not considered relevant by the parties at the time the trust agreement was created. Rather, as the trust was to convey a benefit upon the children upon the death of defendant, it is unclear how the defendant can rely upon an independently significant fact to claim this requisite change of circumstances.

Language in Kate v. Kate, 234 Minn. 402, 48 N. W. 2d 551 (1951), indicates that there may be no equivocation—the change must have occurred, not merely be a future possibility.

The facts utilized by defendant in seeking this modification also include a concern that his advanced age of 67 years will cause a decrease in earning power as he becomes incapable of fulfilling his present duties at the Company. This fact, though surely true, is only indicative of a future event. Finally, the fact evidenced below that he had acquired an additional support obligation to the child of his second marriage is no longer of any import following the couple's remarriage.[1] Therefore, defendant has not sustained the burden with regard to the change of circumstances, and the order of the lower court denying modification is affirmed.

5. The educational expenses for which plaintiff seeks reimbursement have produced a substantial interpretive issue. As is evidenced by paragraph 5 of the divorce decree, defendant was ordered "to provide for, and pay the cost of, further education of each of the minor children of the parties hereto, including attendance of either or both of said children at a university, college or other institution of higher education * * *." The lower court

---

[1] Since the plaintiff, Esther Annabelle LaBelle, died on June 30, 1974, the defendant is, pursuant to the judgment and decree of divorce, further relieved of his obligation to make alimony payments. This fact, coupled with those evidenced above, indicates additional support for our conclusion that a change in circumstances to the defendant's detriment has not occurred.

held that this provision placed the onus of both private high school education and college expenses upon defendant. We concur in this result. Although it is arguable that the phrase "further education" may indicate an intention of the parties to require plaintiff to bear high school educational expenses, this argument must fail when construed in the context of the entire stipulation. The use of the designation "minor children" must be read as a term of identification of the parties for whom these expenses were to be provided and the inclusionary phrase of "university, college or other institution of higher education," can only be construed as exemplary, rather than exclusive.

Plaintiff contends that inasmuch as most college education is not completed by the time a child reaches majority, it was contemplated that defendant would, by stipulation, agree to assume the obligation of continuing this support. The case of Dunham v. Dunham, 189 Iowa 802, 827, 178 N. W. 551, 560 (1920), is exemplary of the point made by plaintiff:

"It follows, we think, that, defendant having agreed, by the contract and the decree, to give his daughter a college education, this duty and contract continue until performed, whether he dies, or whether the daughter reaches majority. This applies to both children in this case. As a general rule, students do not obtain a complete college education during minority. This is a circumstance, we think, tending to show that it was within the contemplation of the parties that defendant should pay for their college education after majority."

When not specifically agreed to the contrary, it is clear that the obligation for educational expenses should and does terminate upon the child's reaching majority. Minn. St. 1971, § 518.57. Further, by limitation of the statute, the court may not, *sua sponte*, exceed this authority. See, Posselt v. Posselt, 271 Minn. 575, 136 N. W. 2d 659 (1965); Kiesow v. Kiesow, 270 Minn. 374, 133 N. W. 2d 652 (1965); Zieman v. Zieman, 265 Minn. 190, 121 N. W. 2d 77 (1963).

However, the existence of a stipulation which purports to establish an obligation to provide educational expenses beyond the age of majority, and the inclusion of such stipulation in the divorce decree presents a unique question for our determination. The two parties bargained for certain obligations upon divorce, which were approved by the court. Therefore, the finding of the lower court holding the provision enforceable against defendant and requiring him to reimburse plaintiff for educational expenses for his children past the age of majority is valid under paragraph 5 and is affirmed.

Included in these expenses are the costs of the private high school education of Joanne LaBelle. These are viewed as reasonable expenses in light of the past conduct of the parties of sending their children to private school prior to the divorce. It could not have been contemplated that a severance of the marriage would change the educational patterns of the children. Therefore, plaintiff is entitled to reimbursement, as ordered below, in the amount of $3,753.82, as expended by her for these purposes.

Finally, in connection with the expenses incurred for the educational support of the children is the disputed amount of $8,605.00 for the post-high school education of Joanne LaBelle. Defendant contends that the amounts accrued before September 18, 1962, if ever his obligation, are now uncollectable as barred by the 10-year statute of limitation. Minn. St. 550.01. We need not consider this issue since defendant has raised it for the first time on this appeal. See, Steenberg Const. Co. v. Rohr, 296 Minn. 512, 207 N. W. 2d 722 (1973); Rehberger v. Project Plumbing Co. Inc. 295 Minn. 577, 205 N. W. 2d 126 (1973).

Inasmuch as defendant was unable to refute competent evidence as to the amounts in question, we conclude that the finding of the lower court that plaintiff is entitled to reimbursement in the amount of $8,605.00 for expenses paid for the education of Joanne LaBelle is affirmed on the basis that defendant undertook that obligation under paragraph 5 of the divorce decree.

Plaintiff contends that the lower court erred in considering

additional evidence offered by defendant to reduce the amount of medical expenses due plaintiff. By the order of the court dated March 30, 1973, the plaintiff's motion for the payment of the sum of $7,281.50 in medical expenses, as provided for in paragraph 5 of the divorce decree, was granted. The medical expenses were incurred as a result of a series of treatments from 1967 to 1972. It is uncontroverted that defendant did not keep in effect the insurance policies as required under paragraph 5.

Defendant then moved for an amendment to that first order, and on June 19, 1973, the motion was granted on the basis of newly discovered evidence rendering the first award excessive. The award was therefore reduced to $1,678.00.

The admissibility of newly discovered evidence must be decided under the standards that the evidence could not have been ascertained by the attorney with due diligence before the motion was made. See, Rule 60.02, Rules of Civil Procedure; 14 Dunnell, Dig. (3 ed.), § 7128. The above standard having been satisfied, the finding of the lower court that an amendment was necessary was properly made and must be affirmed.

6. This court must now consider the propriety of the lower court's decision to refuse to confirm the trustees under the provisions of Minn. St. 501.33 with regard to the dispute between Richard T. LaBelle (petitioner) and Richard L. LaBelle (who will still be referred to as defendant). We hold it did not err.

The third amendment to the trust agreement of May 13, 1959, named petitioner as both trustee and beneficiary. Minn. St. 501.33 provides:

"Upon petition of any person appointed as trustee of an express trust by any will or other written instrument, or upon petition of any beneficiary of such trust, the district court of the county wherein such trustee resides * * *, shall consider the application to confirm the appointment of the trustee and specify the manner in which he shall qualify. Thereafter such district court shall have jurisdiction of such trust as a proceeding in rem."

The petitioner argues the necessity of this procedure to protect beneficiaries by insuring proper administration of the trust as directed. In re Bush's Trust, 249 Minn. 36, 81 N. W. 2d 615 (1957), is cited by petitioner with construction of the statute as not barring or limiting the trustee's right to secure a settlement of his trust duties or to petition the court for qualification. It is apparent, however, that the thrust of the statute and the cited case is procedural. Kirsch v. Kahn, 276 Minn. 294, 300, 149 N. W. 2d 676, 681 (1967), where the court stated:

"* * * The statute is permissive and not mandatory. While the statute provides for directions by the court upon request, there is no requirement of the law that the district court confirm the trustee's appointment."

The lower court must be affirmed in its denial of the petition to confirm. First, paragraph 4 of the original Trust Agreement, remaining in effect notwithstanding the amendments, provided that upon the death of defendant, or upon the death, resignation or removal of any of the trustees other than the death of defendant, the trust was to be confirmed by the district court which was empowered to appoint a successor trustee, thereby satisfying defendant's intention that there always exist three individual trustees. Defendant suggests that this language has been satisfied despite the removal of petitioner as trustee, for there still remain three trustees and the situation for confirmation has not occurred, since the three original trustees have not resigned, been removed, or died. Second, inasmuch as the trust agreement has been incorporated into the divorce decree, it is apparent that the primary focus of Minn. St. 501.33 has been satisfied without confirmation—namely, the court has already acquired jurisdiction over the trust. Therefore, the lower court did not err in denying the petition and its holding in this regard is affirmed.

7. Finally, we must consider the sufficiency of the evidence to support the lower court's decision to grant defendant's motion for an order discharging petitioner as a trustee.

The motion was granted upon the basis of the petitioner's demonstrated hostility to defendant. Minn. St. 501.43 grants the court broad discretionary power to remove a trustee, employing the broad phrase "who for *any other cause* is deemed an *unsuitable person* to execute the trust." (Italics supplied.) The exercise of this broad discretion should not be disturbed unless wholly unreasonable. Jones v. Stubbs, 136 Cal. App. 2d 490, 288 P. 2d 939 (1955).

The facts made known to the court prior to its ruling on the motion are not complicated. The court took notice of the fact that petitioner was also a petitioner for an order appointing himself as the general guardian of his father. This petition was denied but defendant did receive treatment for alcoholism at approximately the same time. Further, there is pending a matter for petitioner to account for corporate funds which has yet to be decided. However, defendant claims that petitioner admitted in a post-trial pleading that $4,202.87 had been used for personal matters. Petitioner contends that this is an unsupported allegation. After a review of the conduct of the parties throughout these proceedings, the court concluded that there was a just cause for removal.

Upon a review of two considerations—one, the necessitated reluctance of the court to remove a trustee unless convinced of his detrimental effect, and the other, the restraint upon this court against disturbing the exercise of the broad discretionary power of the lower court, it is apparent to this court that no abuse of discretion has been sufficiently shown to require reversal and that the evidence as presented is sufficient to support the removal of petitioner as trustee. The lower court's ruling is therefore affirmed. No attorneys fees are awarded upon this appeal for matters involving the trust.

Affirmed.