**In re the Marriage of Roxanne THUFTIN, Petitioner, Appellant,**

v.

**Franklin James BUSH, Respondent.**

**No. CX–86–1279.**

Court of Appeals of Minnesota.

Nov. 18, 1986.

Thomas L. Johnson, Hennepin Co. Atty., Thomas L. Aarestad, Asst. Co. Atty., Minneapolis, for appellant.

Franklin James Bush, pro se.

Considered and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This appeal is from an order reducing the amount of child support and ordering payment of arrearages. Appellant challenges the modification of support; respondent seeks review of provisions regarding child support arrearages and visitation. We affirm in part, reverse in part and remand.

## FACTS

In July 1983 appellant Roxanne Thuftin had a child, J.E.B. Respondent Franklin Bush, Thuftin's former husband, acknowledged paternity of the child and signed a stipulation agreeing to pay $200 per month child support. Bush was granted the right to reasonable visitation.

Bush has a serious spinal condition and receives monthly social security and veterans dependent's benefits. At the time of the stipulation, he was receiving a total of $579 per month. Bush is a gospel singer, performing at churches, schools and other institutions. His appearances are handled by a non-profit corporation, Burning Bush Presentations, which solicits contributions.

Bush claims to receive no salary or other income from the corporation; however, the corporation has provided him a motorhome for his use.

In March of 1986 Bush brought a motion to reduce the child support amount and to provide a set visitation schedule. His monthly benefits payments had increased to $614 per month; he claimed, however, to be financially unable to pay the child support ordered and to be dependent on loans for basic living expenses. He stated that Thuftin was interfering with his exercise of visitation.

Thuftin opposed the motion, seeking disclosure of the corporation's business records, a judgment for unpaid support arrearages, and an order requiring visitation counseling. She claimed Bush was earning income as a singer, but concealing it in the corporation.

A family court referee found that Bush was not receiving any income outside of his benefits payments, and ordered support reduced retroactively. On review, the trial court reversed the referee's order, but reduced future child support to the guidelines amount of $104.38 per month. The court refused to forgive arrears, which it found to be $1,000. The court ordered visitation mediation and concluded that Thuftin should seek disclosure of corporate records through a motion to compel discovery.

## ISSUES

1. Did the trial court abuse its discretion in modifying child support?

2. Did the court abuse its discretion in ordering payment of arrearages?

3. Did the court abuse its discretion in ordering visitation mediation rather than a set visitation schedule?

## ANALYSIS

1. *Modification of Support*

As the moving party, Bush had the burden of showing a substantial change in circumstances warranting a modification of support. *See* Minn.Stat. § 518.64, subd. 2

(Supp.1985); *Heaton v. Heaton*, 329 N.W.2d 553, 554 (Minn.1983). His benefit payments, however, which he claims are his sole income, have increased slightly. He claims no other change in the circumstances of the parties. He claims no change in his personal financial circumstances arising since the stipulation as a result of his music ministry. His only claim is that he overestimated his financial capacity to provide support for his child.

■ Bush was represented by counsel when he signed the stipulation, and agreed to pay support above the guidelines amount against the advice of his attorney. It is clear that the parties to a divorce may stipulate that one will undertake a level of performance exceeding that which a court would have the right to impose upon him or her. *LaBelle v. LaBelle*, 302 Minn. 98, 115–16, 223 N.W.2d 400, 410 (1974). In this case, Bush claims to have agreed to pay $200 per month in child support because he expected to receive earnings from his music ministry which have not materialized. This disappointment does not justify a reduction of support unless an objective change of circumstances is shown. *See* Minn.Stat. § 518.64, subd. 2; *Kehr v. Kehr*, 375 N.W.2d 88, 90 (Minn.Ct.App.1985) (stipulated support award may be modified on a showing of a change in circumstances).

■ Objective standards must be applied to the modification of stipulated child support as well as to court-ordered support. Otherwise such stipulations, which are to be encouraged, would be effectively undermined. *Fifield v. Fifield*, 360 N.W.2d 673, 675 (Minn.Ct.App.1985).

The trial court reduced the child support ordered without finding a substantial change in circumstances which made the original order unreasonable and unfair. Since the record conclusively establishes no change in circumstances, we need not remand for further findings under *Moylan v. Moylan*, 384 N.W.2d 859, 863 (Minn.1986) (specific findings of fact required as to the factors considered by the trial court in formulating award). *See Price v. Price*, 390 N.W.2d 483, 485 (Minn.Ct.App.1986) (statutory factors on which *Moylan* requires findings become relevant after the moving party meets its initial burden of showing a change of circumstances).

The dissent contends this is a unique case in which inability to pay the stipulated child support amount justifies a reduction in support without a showing of a substantial change in circumstances. Noting that ability to pay expressed as the "financial resources and needs of the noncustodial parent" is a factor in setting child support, the dissent reasons that a substantial change in the ability to pay justifies a modification of support. Minn.Stat. §§ 518.17, subd. 4(e), 518.64, subd. 2 (1984).

Even if current "inability to pay" is a sufficient ground for modification as the dissent suggests, the evidence here does not establish it. Bush presented no documentation of his expenses, past or present. His affidavit presented the briefest summary of current expenses. His fuel, food, and medical and dental care are paid through government assistance. Only a transportation expense of $358 per month pushes his expenses, including child support, above his reported income. In light of Bush's frequent business travels and the use of a corporate-owned motorhome for these travels, this expense should be documented. However, this court is not a factfinder. We note that neither the referee nor the trial court made a finding as to Bush's current expenses. The trial court made no finding as to Bush's "ability to pay." Without such findings, this court under *Moylan* could not determine what change in expenses has occurred or whether Bush is unable to pay the agreed amount of child support. *Id.* at 863.

■ We further conclude that the trial court did not err in failing to order a disclosure of the corporate records. Thuftin did not seek an increase in support, and she is not required to show a change in Bush's income in order to retain the current level of support. She may bring a motion to compel discovery if she seeks an increase in support.

By affirming the trial court on the discovery issue, we do not imply acceptance of Bush's claim that he has no additional income. Other income is simply not relevant given the increase in disability income and the standard for modification. We believe that a disclosure of corporate records would be required in this case only if "ability to pay" were the appropriate standard for modification.

This case presents unique financial as well as personal circumstances. We do not agree that those circumstances bar Bush from relief in the future. His disability payments are only one element of his financial circumstances, the cost-of-living increases a very minor factor. To obtain relief, Bush need only present evidence of all his financial circumstances from which the trial court could find a substantial change occurring since the stipulation.

### 2. Arrearages

■ The trial court ordered Bush to pay arrearages of $1,000. It did not reduce this sum to judgment, nor require evidence as to the amount of support past due.

Bush did not contest the amount of arrearages. He did, however, submit an agreement signed by Thuftin, as a partial settlement of other litigation, in which she agreed that Bush's share of the dividends from jointly-owned stock would be credited as child support payments. The trial court made no finding on the amount or validity of such a credit.

We note from the record that there is no affidavit from Hennepin County Support and Collections as to the amount of arrearages, nor is there an affidavit from Thuftin establishing that amount. Thuftin's "blanket" affidavit, covering all factual assertions in her counsel's memorandum, is inadequate. On remand, the trial court should consider evidence of the credit agreement and require evidence as to the current amount of the arrears.

### 3. Visitation

■ Although Bush sought a set visitation schedule, his own travel schedule is irregular and Thuftin works alternating shifts. Bush's argument at the hearing was not that he could maintain a regular visitation schedule, but rather that he should have more frequent and extensive visitation, given reasonable notice. Inevitably, this would require cooperation between the parties. There was no abuse of discretion in ordering visitation mediation, which Bush agreed to at the hearing.

### DECISION

It was an abuse of discretion to reduce child support without a showing of a substantial change in circumstances. The amount of child support set forth in the stipulation and incorporated in the decree at $200 per month is reinstated. The finding on support arrearages is remanded for further evidence. The trial court did not abuse its discretion in ordering visitation mediation.

Affirmed in part, reversed in part and remanded.

RANDALL, Judge, dissenting.

I respectfully dissent on the issue of child support. I concur with the rest of the majority opinion, but on the issue of child support I would affirm the trial court.

In 1983, respondent acknowledged paternity of a child and signed a stipulation agreeing to pay $200 a month child support. At the time respondent signed the stipulation, he was permanently disabled from a spinal condition. His only income was his social security and veteran's dependent's benefits, which, combined, totalled $579 per month.

In the stipulation underlying the original divorce decree respondent agreed, against his attorney's advice, to pay $200 a month in child support. This amount was in excess of the child support guidelines. When he signed the stipulation, respondent erroneously anticipated that his income would increase and that he would be able to make the $200 a month payment. This amount exceeded any amount that a judge might reasonably order respondent to pay, should

the issue of child support have been tried to a conclusion, and was a product of respondent's generosity.

In addition to his disability benefits, respondent anticipated income from performances as a country western gospel singer for Burning Bush Productions. Burning Bush is a non-profit corporation that handles singing tours. Respondent, despite being physically disabled, was able to pursue a career as a performer.

In 1986 respondent brought a motion to reduce child support. His disability benefits had increased by a modest amount to a net of $614 per month, but respondent realized, based on his lack of income over the past three years, that he could not pay the $200 per month child support he had agreed to in the stipulation. In fact, he had experienced difficulty making the $200 per month payments prior to making his motion, had accrued arrearages, and his financial straits necessitated his moving the court to reduce his support obligation. The family court referee heard the evidence, made a finding that respondent did not have the ability to pay $200 per month, and reduced child support to $86.60 per month. The district court judge who reviewed the matter did not expressly adopt each and every finding of the referee, but did so by implication because the district court accepted everything the referee found. The judge did adjust the referee's figure of $86.60 upward to $104.38 per month, the exact guidelines amount.

Although the trial court used the word "reverse" as to the referee's order, a reading of the referee's order and the trial court judgment shows that the trial court acquiesced in the referee's order in all respects except the trial court raised future child support $17.78 a month up to $104.38.

Respondent had argued that the three years since the dissolution have not produced the hoped-for income needed to make the generous amount he had volunteered to pay in 1983. Respondent had on file the standard Hennepin County family court affidavit as to income and expenses substantiating his claim that monthly living expenses, debt obligations, and $200 per month child support payments total $968.60, or $354 per month *more* than his total monthly disability benefits. Appellant did not take issue with respondent's claimed monthly expenses but argued that he was misstating his income and made more per month than his affidavit disclosed. On that issue, the referee made a specific finding that respondent had no spendable income from gospel singing and thus ruled in respondent's favor on the issue appellant presented. The trial court confirmed that finding of the referee: " * * * there is little evidence that respondent has any financial benefits from this corporation." Thus, on the one key disputed issue, the trial court ruled in favor of respondent, appellant did not raise that issue on appeal, and the majority does not attack the trial court findings that respondent's income is limited to disability payments.

Respondent was not in court asking for a deviation downward from the guidelines. Respondent was in court arguing that he had promised to pay more than the guidelines amount based on some expectations of income which did not materialize. After suffering that situation for three years, respondent argues that he is entitled to a reduction to the guidelines amount as it is clear that he cannot both meet his basic needs and pay $200 per month child support.

The majority implies that respondent's living expense figures are inaccurate:

His affidavit presented the briefest summary of current expenses. His fuel, food, and medical and dental care are paid through government assistance. Only a transportation expense of $358 per month pushes his expenses, including child support, above his reported income. In light of Bush's frequent business travels and the use of a corporate-owned motorhome for these travels, this expense should be documented.

Since appellant never challenged respondent's expenses at the trial level, and since appellant did not raise the issue of respon-

dent's expenses on appeal, this statement by the majority is gratuitous. Respondent's expenses are not an issue before this court.

Appellant's expense affidavit was before the trial court. It was considered by the trial court, not raised as an appeal issue by appellant, and now the majority opinion somehow sits as a fact finder on the credibility of a trial court affidavit.

The majority holds that the record "conclusively" establishes no changed circumstances. The trial court did not use the exact words "changed circumstances," but by substantially reducing appellant's child support obligation to the guidelines level, the trial court impliedly reached that conclusion. The majority opinion reads as though respondent presented no evidence on his living expenses. It ignores respondent's uncontested affidavit which was filed using the approved standard family court form. It is clear that the trial court accepted respondent's contentions as to his expenses as it reduced respondent's child support obligation by about fifty percent.

Given these facts, the district court reached the only reasonable conclusion possible, namely, that appellant was entitled to some relief from an unreasonable child support obligation.

I find no inequity to appellant in what the trial court did. At the time of the stipulation, appellant understood that respondent was basing his willingness to pay child support on projected, not actual income. Respondent was not in court seeking a deviation downward from the guideline level. Respondent was in court seeking a modification down to the guidelines amount, an amount which when added to his uncontested monthly expenses is still going to exceed his total net monthly disability payments. Even after the trial court's reduction which, respondent is willing to accept, his combined monthly expenses and child support obligation are about $870 a month and his net income is $614 a month.

The referee made a specific finding that respondent did not have the ability to pay $200 a month. The trial court, without mentioning that specific finding, obviously accepted it as the trial court confirmed a substantial reduction in respondent's obligation. I cannot say that the trial court "abused its discretion" in reducing child support.

The majority implies that the slight increase in respondent's income justifies this court's refusal to affirm the reduction. I note that since social security benefits and veteran's benefits generally go up by a small percentage annually (COLA), under the majority's reasoning respondent is forever barred from seeking any relief since his income next year and the year after and ten years down the road will always be more than the $579 in benefits he received when he signed the stipulation.

I would hold that when an obligor's income consists solely of permanent disability benefits from the government, the mere existence of a slight annual COLA increase does not prevent a trial court from giving appropriate relief on motions to decrease child support or maintenance if the record otherwise establishes that relief is warranted.

The referee and the trial court, in combination, found, based on the evidence presented, that respondent did not have the ability to pay $200 per month support and ordered child support at the guidelines amount. The majority suggests that because respondent knowingly stipulated to the current level of support, the amount cannot be reduced. I cannot agree. Common sense dictates that blood cannot be taken from a turnip on the theory that someone once thought the turnip would bleed.

The majority cites *Fifield v. Fifield*, 360 N.W.2d 673 (Minn.Ct.App.) for the proposition that an "objective" change in circumstances must be shown. *Fifield* does not so hold, nor does Minn.Stat. § 518.64, subd. 2 (1984) or any case law so hold. This is not the proper standard. A trial court can, and in this case did, exercise discretion in determining whether a change of circum-

stances has occurred. It can take into account all relevant factors.

The majority also misstates the holding in *Kehr v. Kehr*, 375 N.W.2d 68 (Minn.Ct. App.1985). *Kehr* does not even address the issue of failure of projected income to materialize. Section 518.64 is also silent on projected income. *Kehr* holds that a stipulated child support award is subject to modification if the § 518.64 factors are met.

The proof offered by respondent to the trial court that he had "a substantial change of circumstances" was his three years of documentation reviewing his living expenses and income vis-a-vis the $200 per month child support obligation. Appellant did not challenge respondent's position on his living expenses and debt obligations. Appellant challenged respondent's claim that his income was limited to disability benefits, but on that issue appellant lost. Thus, our record for review includes the referee and trial court's findings of $614 per month income, respondent's unchallenged evidence on expenses, and a referee's finding of inability to pay. I cannot say the trial court abused its discretion in modifying respondent's child support obligation downward to reflect the guidelines amount.

I would have affirmed the judgment of the trial court.